IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ERIC SHAW     PLAINTIFF

v.     Civil No. 6:19-CV-06006

HOT SPRINGS, CITY OF; HOT SPRINGS, COUNTY OF; SHERIFF MIKE CASH (in his official capacity); and CHIEF OF POLICE JASON STACHEY (in his official capacity)     DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is a Motion to Dismiss on the Pleadings by the City of Hot Springs and Defendant Stachey in his official capacity. (ECF No. 18).

### I. BACKGROUND

Plaintiff filed his Complaint on January 14, 2019. (ECF No. 1). Plaintiff alleges his constitutional rights were violated by the delay of medical care on May 9th and 10th of 2016. (*Id*. at 6). Specifically, Plaintiff alleges that at 11:30 pm on May 9, 2016, he was taken into custody by Hot Springs County jail staff with a bleeding bullet wound in is right thigh. (*Id*.) He alleges an ambulance was not called for him. Instead, he was taken into custody by City of Hot Springs police officers at 12:15 am on May 10, 2016. These officers then drove him past the Malvern hospital to the National Park Medical Center forty-five minutes away. (*Id*.). Plaintiff was then seen by Dr. Khan Akbar at 1:37 am. (*Id*.).

Plaintiff alleges Stachey and Cash, in their official capacities as the City of Hot Springs Police Chief and Hot Springs County Sheriff, were negligent in their training of officers. He states this resulted in officers being "negligent in the case of my medical needs while in their custody." (*Id*.). Plaintiff appears to allege that the officers acted in violation of the Arkansas Police Chiefs' Policy and Procedures Manual for Emergencies 2.22. (*Id*.)

Plaintiff alleges he received "inadequate medical attention" because an ambulance with EMTs was not called immediately, it took forty-five minutes to get him to the National Park Medical Service, and he was not seen by a doctor at the medical center until 1:37 am. (*Id*.). Plaintiff states the medical records indicate he was shot by police. (*Id*.).

Plaintiff alleges he suffered emotional distress as a result of the delay in medical treatment because he was afraid he would bleed to death. He now has a "lifelong fear and lack of trust in law enforcement." (*Id*.).

Plaintiff proceeds against Defendant Stachey and Cash in their official capacity only. (*Id*. at 2, 6).

Plaintiff filed a Supplement to his Complaint on February 13, 2019. (ECF No. 13). Defendants' correctly note that Plaintiff did not request or receive permission from the Court to file this Supplement pursuant to Fed R. Civ. P. 15(d). The Court will, however, consider this information. The Supplement consisted of Plaintiff's medical records from the National Park Service Medical Center and a criminal investigation report by Mark Fallis, dated May 9, 2016. (ECF No. 13). The criminal investigation report states that Plaintiff drove from Malvern, Arkansas to Hot Springs, Arkansas, in the company of an adult female and her child, to purchase the drug "Ice." Plaintiff was shot in the leg during the attempted drug purchase. He then drove himself and his companions to the Budget Inn in Malvern where he was arrested. At the time of the arrest,

bloody clothing was seen in the hotel room. (ECF No. 13 at 7). There is no indication in the report that Plaintiff himself sought medical care for the gunshot wound during his thirty to forty-five-minute drive. In contrast, the medical records indicate that Plaintiff told emergency room staff that police had shot him in order to subdue him. (ECF No. 13 at 8).

Defendant Stachey and the City of Hot Springs filed their Motion for Judgment on the Pleadings on April 26, 2019. (ECF No. 18). Plaintiff filed a Response in Opposition to the Motion on May 23, 2019. (ECF No. 22).

## II. LEGAL STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted)). A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

## III. ANALYSIS

Defendants Stachey and the City of Hot Springs argue Plaintiff's case should be dismissed because: (1.) Plaintiff's official capacity claims fail as a matter of law; and (2.) the City of Hot Springs is entitled to tort immunity from Plaintiff's negligence claim.

3

**A. Official Capacity Claims**

Plaintiff failed to allege any plausible official capacity claims. Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit Court of Appeals discussed the distinction between individual and official capacity suits. As explained by the Court in *Gorman*:

> "Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S.Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S.Ct. at 362."

*Gorman,* 152 F.3d at 914. Plaintiff failed to identify any custom or policy of the City of Hot Springs which violated his constitutional rights. He therefore fails to state any plausible official capacity claims against Defendant Stachey.

**B. Supervisory Liability - Failure to Train**

Plaintiff's allegations that Defendant Stachey was negligent in his training of officers fails to state a plausible claim. Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Id.* (quotation omitted). In order to show that either Defendant violated his rights by failing to supervise the unidentified

4

officers, Plaintiff must show that Stachey (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused injury to Plaintiff. *Id.* at 1002 (quotation omitted). As with a failure-to-supervise claim, a failure-to-train claim requires a plaintiff to show that a supervisor "was deliberately indifferent to or tacitly authorized the offending act[ ]. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)).

Here, Plaintiff did not allege that Defendant Stachey was present, involved in, or authorized the alleged delay in medical care on the night of his arrest. Nor does he allege that Defendant Stachey had notice, prior to Plaintiff's arrest, that any training procedures and supervision were inadequate and likely to result in a constitutional violation. Plaintiff alleges only that Defendant Stachey failed to follow Arkansas Police Chiefs Policy and Procedures Manual for Emergencies 2.22. Plaintiff did not provide a copy of this manual and did not state how Defendant Stachey violated this policy or how that violation resulted in the alleged violation of his rights in his Complaint or Supplement. In his Response, he alleges only that this policy states prisoners have the right to adequate medical care. (ECF No. 22 at 2). Further, "a violation of prison policy alone does not give rise to section 1983 liability. *Moore v. Rowley*, 126 Fed. App'x. 759, 760 (8th Cir. 2005) (citing *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997)).

Finally, it does not appear that Plaintiff's allegations support a claim that his constitutional rights were violated by any delay in medical care caused by insufficient training. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to

prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether or not

medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Defendants concede that Plaintiff's gunshot wound met the objective first prong of the deliberate indifference test. They argue however, that he has not met the subjective second prong of the test because he has not alleged that the delays detrimentally affected his medical prognosis or that Defendants ignored an acute or escalating situation. In fact, Plaintiff states Defendants took him to a hospital within 45 minutes of taking him into custody. Plaintiff himself did not present to an emergency room or other medical care provider after he was injured; rather he drove at least 30 minutes to a hotel. Further, based on the medical records supplied by Plaintiff, Plaintiff was

able to walk into the emergency room under his own power when the Defendants transported him there. Plaintiff's vitals were checked, and physician notes indicate he was "in no acute distress." Plaintiff reported numbness in the anterior portion of his thigh. (ECF No. 13 at 8). He reported his pain as only a two out of ten, with ten being the highest level of pain. (ECF No. 13 at 4). There is no indication in the medical records that Plaintiff was in danger of exsanguination or that he needed a blood transfusion due to profuse bleeding. Plaintiff was discharged to the police at 5:21 am in stable condition. He was advised to take ibuprofen for any pain. (ECF No. 13 at 3).

Thus, there is nothing in the medical records supplied by Plaintiff to indicate that Defendants ignored an acute or escalating situation or that his medical prognosis was detrimentally affected by any delay in medical care. Nor has Plaintiff alleged any facts indicating that his medical condition during the delay was acute, that his symptoms were escalating, or that his medical prognosis was detrimentally affected. Instead, he merely states that he has suffered emotional trauma because he was afraid he would bleed to death and now fears law enforcement. Plaintiff's mere disagreement with the medical care provided to him does not rise to the level of a constitutional violation. *See Nelson,* 603 F.3d at 449 ("[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.").[1]

### C. State Negligence Claim

Jurisdiction over the Plaintiff's state law negligence claim exists solely by virtue of the supplemental jurisdiction statute, 28 U.S.C. § 1367, which provides jurisdiction over state law claims forming part of the same "case or controversy" as federal claims. In the absence of any

---

[1] Plaintiff raised the same claims against the City of Malvern, Hot Spring County, various police officers, the National Park Medical Center and NPMC staff in *Shaw v. City of Malvern,* Case. No. 6:18-cv-06056 (W.D. Ark. 2018). This case was dismissed without prejudice at preservice screening on July 31, 2018.

federal constitutional claims, there is no basis to exercise supplemental jurisdiction over Plaintiff's state law claim of negligence.

## IV.  CONCLUSION

Accordingly, I recommend that the Motion to Dismiss on the Pleadings by the City of Hot Springs and Defendant Stachey in his official capacity (ECF No. 18) be **GRANTED** and Plaintiff's case be **DISMISSED WITHOUT PREJUDICE** against them**.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **6th day of November 2019**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE